**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-185-DLB**

**AZAM ISMOILOV**                                                                                          **PETITIONER**

v.                                          **MEMORANDUM OPINION AND ORDER**

**JASON MAYDAK, et al.**                                                                          **RESPONDENTS**

* * * * * * * * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court on Petitioner Azam Ismoilov's Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Responses[2] and Ismoilov having failed to file a timely reply, this matter is ripe for the Court's review.  For the following reasons, the Court will **grant** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Tajikistan.  (Doc. # 17-1 at 1).  He presented himself at the San Ysidro port of entry on May 7, 2023.  (*Id.*).  DHS released Ismoilov into the country on a grant of parole, which terminated automatically on May 5, 2024.  (Doc. # 17 at 2).  On March 18, 2026, Ismoilov was served with a Notice to Appear, alleging

---

[1]      Petitioner files this action against Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary, U.S. Department of Homeland Security ("DHS"); Todd Blanche, Attorney General; Tammy Marich, Acting Director, Chicago ICE Field Office (collectively, the "Federal Respondents"); and Jason Maydak, Boone County Jailer. (Doc. # 1 at 1).

[2]      Respondent Maydak filed a separate Response, arguing that he is not Petitioner's immediate custodian. (Doc. # 18 at 2).

that he was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (Doc. # 17-3 at 1).  Ismoilov

was arrested by the Clark County (Indiana) Sheriff's Office on March 10, 2026 for a traffic

offense.  (Doc. # 1 ¶¶ 3-5).  Subsequently, on April 1, 2026, Ismoilov was transferred to

ICE custody.  (*Id.* ¶ 11).  He is currently detained at Boone County Detention Center.  (*Id.*

at 2).

On April 7, 2026, Ismoilov filed the instant Petition for Writ of Habeas Corpus (Doc.

# 1) in the Western District of Kentucky.  His Petition was transferred to this Court on April

28, 2026.  (Doc. # 12).  On April 30, the Court issued an order directing Respondents to

respond to the Petition.  (Doc. # 16).  Respondents having filed their Responses (Docs.

# 17 and 18), and Ismoilov having failed to file a reply—and the time for doing so having

passed—the Petition is ripe for the Court's review.

### III.    ANALYSIS

Ismoilov's Petition alleges that his present detention without an individualized

custody determination is unlawful.  (Doc. # 1 at 4-5).  As a result, he asks the Court to

order his immediate release or, in the alternative, "[o]rder an individualized bond hearing

within 48 hours."  (*Id.* at 5-6).

#### A.    Proper Respondents

Before turning to Petitioner's substantive argument, the Court will address

Respondent Maydak's contention that he is not a suitable respondent.  (Doc. # 18 at 2).

"[T]he federal habeas statute straightforwardly provides that the proper respondent to a

habeas petition is 'the person who has custody over the petitioner.'"  *Rumsfeld v. Padilla*,

542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242).  The Supreme Court has held that

"[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody

2

within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Ismoilov] is being detained,' Maydak is [Ismoilov's] custodian." *Id.* (quoting *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)). Petitioner is presently detained at Boone County Detention Center. (Doc. # 1 at 2; Doc. # 18 at 1). Maydak, as the elected Jailer, "oversee[s] and operate[s]" Boone County Detention Center. (Doc. # 18 at 1). Accordingly, the Court will deny Maydak's request to dismiss him as a respondent. Having concluded that Maydak is a proper respondent, the Court turns to the substantive arguments Petitioner raises in his Petition.

### B.    Relevant Framework

At its core, habeas provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And this relief is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A district court may grant a writ of habeas corpus to any person who shows that he is detained within the court's jurisdiction in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

3

Enacted in 1952, the INA consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law." U.S. Citizenship and Immigration Services, Immigration and Nationality Act (July 10, 2019), https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=The%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Representatives. Relevant to Ismoilov's Petition, Congress has established two statutes, codified in Title 8, which govern detention of noncitizens pending removal proceedings—8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It states, in pertinent part:

**(b)      Inspection of applicants for admission**

**(2)      Inspection of other aliens**

**(A)      In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A). Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, is titled "Apprehension and detention of aliens" and reads:

**(a) Arrest, detention, and release**

4

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)    May continue to detain the arrested alien; and
>
> (2)    May release the alien on—
>
> (A)    Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c), requiring mandatory detention in certain circumstances.  Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025).  The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

> (1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and
>
> (2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).  Neither of these subsections applies to Ismoilov.

The Federal Respondents note that a consolidated case before the Sixth Circuit implicated the same legal question as Ismoilov's Petition.  (Doc. # 17 at 3).  On May 11, 2026—the same day the Federal Respondents filed their Response (*Id.*)—the Sixth Circuit issued its decision in that case.  *Lopez-Campos et al. v. Raycraft et al.*, --- F.4th -

5

--, 2026 WL 1283891 (6th Cir. May 11, 2026).  In *Lopez-Campos*, the Sixth Circuit determined that § 1226 is the properly applied statutory provision for detaining noncitizens like Ismoilov.  --- F.4th ---, 2026 WL 1283891, at *13 (6th Cir. May 11, 2026).  In its opinion, the Sixth Circuit affirmed the judgments of four district courts below, determining that the "text, canons, and past practice" of two statutes all support the conclusion that the petitioners were not subject to the mandatory detention provisions of § 1225.  *Id*. at *6.  Accordingly, the Circuit rejected the government's position that § 1225 governs noncitizen detainees, concluding that "[t]o hold otherwise would subject long-term law-abiding residents in the United States. . . to the hardship of mandatory detention without due process."  *Id*. at *13.

The same reasoning applies here.  Ismoilov has been in the United States for more than three years.  (Doc. # 1 ¶ 1).  Although he was initially paroled into the United States, Ismoilov's parole expired nearly two years before he entered ICE custody.  (Doc. # 17 at 2).  By remaining in the country undetected after his parole expired, Ismoilov obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts.  *See Matkarimov v. Noem*, No. 2:26-cv-48-DLB, 2026 WL 700072, at *2 (E.D. Ky. Mar. 12, 2026); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him

6

in the "perpetual status as an 'arriving alien'"); *Linarez v. Stamper*, No. 1:26-cv-101-JAW, 2026 WL 592294, at * 6 (D. Me. Mar. 3, 2026) ("The expiration of [the petitioner's] parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening."); *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at * 12 (S.D.N.Y. Dec. 17, 2025) ("Every court that this Court is aware of that has considered the question has determined the same."). Accordingly, pursuant to the Sixth Circuit's recent opinion in *Lopez-Campos*, the Court concludes that § 1226 governs Ismoilov's detention.

### C.    Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Ismoilov, the Court must now determine whether his present detention violates his due process rights. The Federal Respondents contend that Ismoilov is not entitled to any more detention than Congress has authorized. (Doc. # 17 at 8). And because the Federal Respondents insist that his detention is mandatory under § 1225(b)(2)(A), they conclude that Ismoilov is receiving all the process he is due. (*Id.*). However, as discussed above, Ismoilov's detention is governed by § 1226(a). In fact, the Sixth Circuit has concluded that petitioners like Ismoilov have "passed through our gates" which affords them protection by the Fifth Amendment's Due Process Clause. *See Lopez-Campos*, 2026 WL 1283891, at *11.

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))). To determine

whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Ismoilov has a cognizable liberty interest in avoiding detention. *See Lopez-Campos,* 2026 WL 1283891, at *13 (a person's liberty interest in being free from detention "is the most fundamental interest protected by the Due Process Clause and is shared by citizens and noncitizens alike."); *Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]"). Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Ismoilov's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Ismoilov is not afforded a detention hearing. *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025) (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted). To date, Ismoilov has not had a detention hearing at which his eligibility for bond is determined on the merits of his individual circumstances. Thus, his present detention creates a high risk of an erroneous deprivation of his liberty interest. Accordingly, the second *Mathews* factor favors Ismoilov.

As to the third factor, the Federal Respondents argue that the United States has a strong interest in immigration proceedings. (Doc. # 17 at 9). While the Court acknowledges this considerable interest, it finds that the "existing statutory and regulatory safeguards" which this Court discussed at length about above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at *7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Ismoilov.

Ismoilov claims that immediate release is the most appropriate remedy in this case. (Doc. # 1 at 5). This Court agrees with Petitioner that his Fifth Amendment due process rights were violated when he was detained without access to an individualized hearing. However, the Court disagrees that immediate release is the proper remedy. Rather, this Court agrees with other district courts in the country which have concluded that the proper

9

remedy to this violation is a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("[T]he government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)"); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2nd Cir. 2020) (finding that the "district court correctly ordered a new bond hearing where the Government bore the burden of proof"); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Ismoilov's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **constitutionally adequate bond hearing where the government bears the burden of proof by clear and**

10

**convincing evidence** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)    Respondents shall file a Status Report with this Court **on or before June 17, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 3rd day of June, 2026.



Signed By:

David L. Bunning

Chief United States District Judge